IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-49,164-04






EX PARTE DERRICK FRAZIER, Applicant





ON SUBSEQUENT APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. 97-8-3675 FROM THE


24th DISTRICT COURT OF REFUGIO COUNTY






 Cochran, J., filed a concurring statement in which Keller, P.J., and Womack, J.
joined.


CONCURRING STATEMENT 



 I join in the Court's Order denying applicant's motion for a stay of execution and
dismissing his subsequent application for a writ of habeas corpus. Applicant asserts that he
is entitled to a stay of execution (and ultimately relief on his habeas claim) based upon newly
discovered evidence that the State knowingly sponsored perjurious testimony by Michael
Brown. He also asserts that he did not obtain an affidavit from Mr. Brown until two days
before his execution because it was "Michael Brown's conscience and Mr. Frazier's
imminent execution [that] have prompted him to come forward with this information." 
Application at 5. As the Court's Order correctly concludes, this is not newly discovered
evidence. 

 Under some circumstances, a last-minute subsequent application that surmounts the
due diligence procedural hurdle of Tex. Code Crim. Proc. art. 11.071, § 5, would require a
stay of execution and a remand to the convicting court for resolution of the merits of that
claim. Such is unnecessary in the present case, however, because, assuming the due
diligence hurdle were met and the underlying facts in the affidavit were accepted as true,
record evidence (which applicant does not cite) clearly demonstrates that his claim is
nonetheless without merit. 

 First, applicant fails to mention in his application that the State did not call Mr. Brown
as a witness. The defense called Mr. Brown as its witness. Thus, it can hardly be said that
the State knowingly sponsored perjurious testimony. Reading Mr. Brown's trial testimony
(which should have been included as an exhibit in any last-minute habeas corpus
application), (1) it is obvious that the jury was fully informed of the fact that he had entered into
an agreement with the State concerning any testimony that he might give in the capital
murder trials of either Derrick Frazier or Jermaine Herron. As the defense asked Mr. Brown
on direct examination, "Under that agreement were you supposed to testify truthfully in
either case?" Mr. Brown responded, "Yes, sir." Then the defense asked its witness, "And
the State had agreed to recommend ten years probation in each case?" "Yes," responded Mr.
Brown. (2) And the defense went on to explore other conditions of the agreement and the
discussions that Mr. Brown had had with police about the facts of the capital murder. Only
then did the defense turn to the content of Mr. Brown's factual recollection of the events. 
And Mr. Brown's trial testimony was not particularly inconsistent with his affidavit. The
purport of his trial testimony and that of his August 29, 2006, affidavit was that it was
Jermaine Herron who had a previous connection to the Lucich ranch, and that it was
Jermaine's suggestion that the three men- applicant, Jermaine, and Brown-steal guns and
money from the ranch. Mr. Brown reiterated numerous times, during direct examination, that
Jermaine was the proverbial "leader of the pack," although he did say on cross-examination
that applicant, was the leader and was showing Jermaine how to do things "like he was a
pro." 

 Furthermore, Mr. Brown's trial testimony and his August 29, 2006, affidavit are not
particularly inconsistent with applicant's own videotaped confession which the trial court
admitted at the trial. It was applicant's confession that the State relied upon for its account
of the capital murders, not Mr. Brown's testimony for the defense. That confession was
described in the summary of the evidence from the direct appeal of this case:

 Michael Brown testified that, on the evening of June 25, 1997, he drove
appellant and Jermaine Herron to the Lucich home, which was located
approximately ten miles from Refugio in the country. Appellant and Herron
had been inside the place before and knew where guns were kept. In the car,
appellant and Herron discussed the plan for stealing the guns. The plan was
that they would quickly retrieve the guns and kill anyone in the home. 
However, before they could enter the Lucich home, the lights came on. As a
result, the three men drove away from the scene before commencing a
burglary. The next morning, Brown drove appellant and Herron back to the
Lucich home, dropped them off, and drove away.

 In his videotaped confession, appellant narrated the following set of
events occurring that morning. After burglarizing the Lucich home, appellant
and Herron took a pistol and went to the Nutt residence. Hiding the pistol, the
two men approached Besty Nutt, and Herron conversed with her. After this
conversation, Betsy offered to take appellant and Herron to Refugio. The three
of them entered Betsy's pickup truck, but, as she started the engine, Betsy
realized that she had forgotten her mobile phone. She turned off the engine
and went back inside her home to retrieve the phone. While Betsy was in her
home, Herron told appellant, "I'm going to do 'em now," which appellant took
to mean Herron was going to kill the home's occupants. Appellant responded,
"It's your business." When Betsy came back to her truck and started the
engine, Herron told her that he needed to use the bathroom. Betsy told him
that he could go inside and do so, and Herron and Nutt entered the residence. 
Soon afterwards, Herron returned from the residence and told Betsy that she
had a phone call. Betsy exited the truck and entered her home, with appellant
following her. Once inside the Nutt home, Herron pointed the pistol at Betsy
and told her not to move. Hearing the commotion, Cody Nutt came into the
room occupied by appellant, Herron, and Betsy. Then Herron shot Cody with
the pistol. After shooting Cody, Herron handed the gun to appellant and told
appellant to shoot Betsy. Although he did not want to do it, appellant shot
Betsy twice. Both shots hit Besty in the head. The first shot was from six to
seven feet away while the second shot occurred when appellant was standing
over Betsy with the gun two or three feet away from her. Then Herron set the
house on fire, and Herron and appellant drove away in Betsy's truck. (3)

 According to Brown's testimony, Herron later called Brown on the
telephone. During their conservation, Herron told Brown that he (Herron) had
killed a lady and a little boy. However, at a later date, when Brown and
Herron were in jail, Herron told Brown that appellant was the one who shot
both persons.


 Given applicant's own videotaped confession, Mr. Brown's present affidavit, which
seemingly conflicts in only minor details with his trial testimony as a defense witness, cannot
be considered material. Although he now alleges gross misconduct by the prosecutor who
told him what to say, Mr. Brown has failed to point to any specific trial testimony that he
now asserts was false and was "coerced" by the prosecution. 

 With these comments, I join the Court's Order.


Filed: August 31, 2006

Do Not Publish
1. Such an inclusion of the complete direct and cross-examination testimony would be
especially important in a case such as this one, because Mr. Brown's affidavit does not point to
the specific trial testimony that he now asserts was false. 
2. Mr. Brown's probation on that robbery and burglary case was revoked for unrelated
reasons and he is currently serving a 75 year sentence. 
3. The Fifth Circuit included another rendition of applicant's confession in its unpublished
opinion denying a certificate of appealability on applicant's first federal application for a writ of
habeas corpus. See Frazier v. Dretke, No. 04-70040, 2005 U.S. App. LEXIS 16792 (5th Cir.
August 10, 2005) (not designated for publication).